MANISH KUMAR (CSBN 269493)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
manish.kumar@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GARRY WAN,<br><br>Defendant. | Case No. CR 14-00604 PJH<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1**<br><br>Date: June 21, 2017<br>Time: 2:30 p.m.<br>Court: Hon. Chief Judge Phyllis J. Hamilton |

The United States respectfully requests that this Court sentence defendant Garry Wan to (1) serve 11 months custody, based on the government's downward departure for substantial assistance, (2) serve three years of supervised release, (3) pay a $100 special assessment, and (4) pay a fine of $7,500. This sentence is consistent with the parties' Fed. R. Crim. P. 11(c)(1)(A) and (B) plea agreement.

## BACKGROUND

From May 2008 until January 2011, defendant regularly participated in the bid-rigging

//

//

conspiracy at the Alameda County foreclosure auctions.[1] Defendant was a salaried employee of California Residential Realty (CRR), which was operated by Chung Li "George" Cheng and Su Chu Chou "Terry" Cheng, cooperating defendants in the related cases. CRR offered various real estate brokerage services to clients, including purchasing properties at the foreclosure auctions.

As a CRR employee, defendant was responsible for attending the trustee sales on a daily basis and bidding on properties for clients, primarily in Alameda County and occasionally in Contra Costa County. PSR ¶¶ 14, 27. He was a regular participant in the Alameda County bid-rigging conspiracy for nearly three years, negotiating direct payoffs or participating in rounds. In total, at least 184 auctions were corrupted by defendant's participation in the conspiracy. Defendant also purchased 46 properties for his employer through the conspiracy, the aggregate value of which was $10.9 million. PSR ¶ 29. The total value of the payoffs in the rounds that he participated in exceeded $1 million. Defendant hosted some rounds—acting as an auctioneer for the secondary auctions—and created detailed round sheets and spreadsheets that his employers used to keep track of bid-rigging payoffs. PSR ¶¶ 17, 24, 27. Defendant sometimes participated in the rounds alongside other CRR employees—such as related defendants George Cheng, Eric Larsen, and Thomas Franciose—to increase the share of the payoffs to his employers by having multiple seats at the rounds. Defendant also performed payment functions for his employer, such as distributing and collecting round payoffs, sometimes by exchanging envelopes on the courthouse steps. PSR ¶ 17.

Defendant was interviewed by the FBI in January 2011. Defendant was reinterviewed pursuant to the cooperation provision in his plea agreement in September 2015.

Defendant entered his original guilty plea to one count of mail fraud and one count of bid rigging in February 2015. In January 2017, the Honorable Judge Westmore presided over a change of plea hearing in which defendant entered a guilty plea to a bid-rigging count only, pursuant to a revised plea agreement. Minute Entry, Doc. No. 24. The Court adopted Judge

---

[1] Out of respect to the Court's familiarity with the charged conspiracy in this and other related cases, a description of the conspiracy is omitted here. The government concurs with the description of the conspiracy contained in the Presentence Report (PSR).

Westmore's Report and Recommendation accepting defendant's guilty plea. Order, Doc. No. 27.

## ARGUMENT

**A.     Guidelines Calculations**

### 1.     Criminal History

In Paragraph 12 of the Plea Agreement, the parties agree that defendant's Criminal History Category is determined by the Court. U.S. Probation calculated defendant's Criminal History Category as I based on the absence of any criminal history, and the United States agrees.

### 2.     Offense Level

U.S. Probation calculated the total offense level as 13. PSR ¶ 25. The plea agreement also calculates the total offense level as 13. This calculation includes a one-level increase for conduct involving the submission of non-competitive bids, a four-level increase for a volume of commerce exceeding $10 million, a downward reduction of two points for being a minor participant, and a downward reduction of two points for acceptance of responsibility. U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1), 3B1.2(b), 3E1.1(a) (U.S. Sentencing Comm'n 2010).

Under the Sentencing Guidelines, an offense level of 13 and Criminal History Category of I results in a sentence ranging from 12 to 18 months of imprisonment.

### 3.     Fine and Restitution

The PSR calculates a fine range of $109,316 to $546,580 is consistent with the plea agreement. PSR ¶ 88; U.S.S.G. §2R1.1(c)(1) (the fine range shall be from one to five percent of the volume of commerce, but not less than $20,000). In Paragraph Nine of the plea agreement, the government agrees to recommend a fine range between $7,500 and $75,000. In light of Probation's assessment regarding defendant Wan's limited ability to pay a fine (PSR ¶ 78), the government recommends a fine of $7,500, at the bottom of the range. The Guidelines indicate that a term of community service may be imposed in lieu of a fine. U.S.S.G. §2R1.1, Application Note 2.

//

As for restitution, while the Mandatory Victim Restitution Act, 18 U.S.C. § 3663, does not apply to this case, restitution is permitted under 18 U.S.C. § 3583(d) (restitution as discretionary condition of supervised release). The parties have agreed that restitution is not appropriate in this case, however, in light of the fact that defendant provided the payoffs he collected to his employers.

In its order accepting Judge Westmore's report and recommendation regarding defendant's guilty plea, the Court accepted defendant's guilty plea but "reserve[d] ruling on whether it will accept the plea agreement, if any, pending receipt of the presentence report." Order, Doc. No. 27. Because the plea agreement is consistent with the Guidelines contained in the PSR, the government will make a motion for the Court to accept the plea agreement at the sentencing hearing.

**B.      Basis for Downward Departure for Substantial Assistance**

The government moves, pursuant to Section 5K1.1 of the U.S. Sentencing Guidelines, for a downward departure from the guidelines sentence under the Rule 11(c)(1)(B) plea agreement in this case. After defendant pleaded guilty in 2015, he sat for an extensive debrief interview with the FBI, where he provided corroborating information regarding the operation of the conspiracy, authenticated various notes and round sheets, and described the conduct of various targets of the investigation. Defendant's cooperation warrants a ten percent reduction for substantial assistance to the investigation. The government recommends that this calculation be made from the low end of the applicable Guidelines. A ten percent reduction off the low end of defendant's Guidelines results in a sentence of eleven months.

**C.      Sentencing Recommendation**

The government's recommended term of imprisonment is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.S.C. § 3553. The most compelling factors weighing in favor of recommendation are the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and the need to afford adequate deterrence.

Defendant's participation in the crime was extensive. Even though his better instincts caused him to question the legality of the rounds, defendant joined an organization that relied

upon a criminal bid-rigging conspiracy as a method of business. He collected a $3,250 monthly salary for his role in purchasing properties at the foreclosure auctions through the conspiracy. While the United States has agreed to a minor role reduction in the plea agreement, defendant's conduct is nevertheless notable for its volume: The 184 rigged auctions in which defendant was implicated is a substantial number relative to the other participants in the conspiracy. The impact of defendant's criminal conduct was significant. Looking at just the properties that defendant purchased, more than $10 million worth of commerce was impacted by defendant's bid-rigging conduct, and the total payoffs for the 184 properties where defendant suppressed competition exceeded $1 million—money that was divided among the conspirators as the fruits of the conspiracy rather than paid to beneficiaries.

      A sentence including a term of imprisonment will promote respect for the law at public foreclosure auctions. As the Court is well aware, the bid-rigging conduct in this case was widespread and brazen. The proposed sentence will serve as a general deterrent to other real-estate investors across the country and others who may be tempted to enrich themselves through white-collar crimes.

      Although the PSR recommends probation, the government submits that a custodial term would be a more appropriate disposition in this case. While defendant's care for his mother and children are certainly laudable, his circumstances do not raise the sort of exigency that would warrant a probationary sentence. Defendant has family members and a former spouse in the area. PSR ¶¶ 54, 59. Moreover, incarceration, rather than probation, more accurately reflects the seriousness of defendant's criminal conduct, a result that was contemplated by the Sentencing Commission: "It is the intent of the Commission that alternatives such as community confinement *not* be used to avoid imprisonment of antitrust offenders." U.S.S.G. §2R1.1 cmt. n.5 (emphasis added).

      Section 3553(a)(6) directs the Court to consider "the need to avoid unwarranted sentence disparities among defendants within similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). To date, four non-cooperating defendants have been sentenced by this Court in the related cases within the applicable Guidelines. Defendant is the
US' SENT'G MEMO.  
No. CR 14-00604 PJH

5

first cooperator to be sentenced.  A below-Guidelines sentence will not create an unwarranted sentencing disparity, given the government's recommendation for a downward departure based on the substantial assistance provided by defendant.

Defendant made an unfortunate decision to join and participate in a conspiracy whose members illegally profited from corrupting the Alameda County foreclosure auctions.  However, an assessment of the history and characteristics of defendant should take into account his candor with the FBI in his 2011 interview, his subsequent acceptance of responsibility, and his cooperation with respect to the charged conduct.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court sentence defendant Garry Wan to (1) serve eleven months of incarceration, (2) serve three years of supervised release, (3) pay a fine of $7,500, and (4) pay a $100 special assessment.

Dated: June 14, 2017

Respectfully submitted,

_____/s/_____
MANISH KUMAR
United States Department of Justice
Antitrust Division